# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# CIVIL ACTION NO. 3:18-CV-00553-KDB

| | |
|---|---|
| DAWN M. TAYLOR,<br><br>Plaintiff,<br><br>v.<br><br>ANDREW SAUL, Commissioner,<br>Social Security Administration,[1]<br><br>Defendant. | ORDER |

**THIS MATTER** is before the Court on Plaintiff Dawn M. Taylor's Motion for Summary Judgment (Doc. No. 13) and Defendant's Motion for Summary Judgment (Doc. No. 17), as well as the parties' briefs and exhibits. Plaintiff, through counsel, seeks judicial review of an unfavorable administrative decision on her application for a period of disability and disability insurance benefits.

Having reviewed and considered the written arguments, administrative record, and applicable authority, and for the reasons set forth below, the Court finds that Defendant's decision to deny Plaintiff's Social Security benefits requires a remand to gather additional evidence and further explain the evidence in support of the ALJ's conclusion that the claimant did not establish a period of disability or entitlement to disability insurance benefits. Accordingly, the Court will **GRANT** Plaintiff's Motion for Summary Judgment, **DENY** Defendant's Motion for Summary Judgement, **REVERSE** the Commissioner's decision, and **REMAND** this matter for further proceedings consistent with this Order.

---

[1] Andrew M. Saul is now the Commissioner of Social Security and is substituted as a party pursuant to Fed. R. Civ. P. 25(d).

1

## I. BACKGROUND

Taylor filed a Title II application for a period of disability and disability insurance benefits on July 10, 2014, alleging disability beginning August 14, 2013. Her claim was denied at the initial level on January 28, 2015 and upon reconsideration on April 6, 2015. (Tr. 59, 77). She had a hearing before ALJ Susan Poulos (the "ALJ") who denied the application in a decision on June 19, 2017. (Tr. 80-97). Taylor then filed for a review of the ALJ's decision with the Appeals Council, which denied review on May 18, 2018. (Tr. 104). The ALJ's decision stands as the final decision of the Commissioner, and Taylor has now requested judicial review in this Court pursuant to 42 U.S.C. § 405(g).

For the reasons stated below, the Court remands the decision of the Commissioner for further proceedings.

## II. THE COMMISSIONER'S DECISION

The ALJ used the required five-step sequential evaluation process established by the Social Security Administration to determine if Taylor had a "disability" under the law during the relevant period.[2] The Fourth Circuit has described the five-steps as follows:

> [The ALJ] asks whether the claimant: (1) worked during the purported period of disability; (2) has an impairment that is appropriately severe and meets the duration requirement; (3) has an impairment that meets or equals the requirements of a listed impairment and meets the duration requirement; (4) can return to her past relevant work; and (5) if not, can perform any other work in the national economy.

*Radford v. Colvin*, 734 F.3d 288, 290-91 (4th Cir. 2013) (paraphrasing 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)). The claimant has the burden of production and proof in the first

---

[2] For the purposes of title II of the Act, "disability" means "the inability to do any substantial gainful activity [SGA] by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a).

four steps. *Pearson v. Colvin,* 810 F.3d 204, 207 (4th Cir. 2015). However, at the fifth step, the Commissioner must prove that the claimant is able to perform other work in the national economy despite her limitations. *See id.*; *see also* 20 C.F.R. § 416.960(c)(2) (explaining that the Commissioner has the burden to prove at the fifth step "that other work exists in significant numbers in the national economy that [the claimant] can do").

The ALJ found at step one of the sequential evaluation that Plaintiff had not engaged in SGA during the period from August 14, 2013 through the date of her decision.[3] (Tr. 16). At step two, the ALJ determined that Plaintiff had two severe, medically determinable impairments, specifically "fibromyalgia and osteoarthritis." (Tr. 85). With respect to fibromyalgia, the ALJ wrote:

> The undersigned has reviewed the claimant's fibromyalgia in accordance with SSR 12-2p. After carefully reviewing the treatment notes, the undersigned finds that this is a severe medically determinable impairment. Dr. Lapp described clinical findings which meet the American College of Rheumatology criteria for fibromyalgia. The claimant has a history of widespread pain. Her examinations showed that she had at least 11 positive tender points on both sides of the body and above and below the waist.

*Id.*

The ALJ then found at step three that Plaintiff did not have any impairment or combination of impairments that met or medically equaled the severity of one of the conditions in the Listing of Impairments at 20 C.F.R. Pt. 404, Subpt. P, App. 1 (Tr. 88). In so concluding, the ALJ specifically found that Taylor's impairments did not meet the requirements of Listing 1.02 (involving disorders of muscles and ligaments) or 14.06 (involving undifferentiated and mixed connective tissue disease).

---

[3] Plaintiff remained insured through December 31, 2018.

After step three, the ALJ determined Taylor's residual functional capacity ("RFC") and discussed why she came to that conclusion. (Tr. 89-96). The ALJ found that Taylor had the RFC to perform light work, as defined in 20 C.F.R. §§ 404.1567(b), as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work (lift and carry 20 pounds occasionally and 10 pounds frequently, as defined in 20 CFR 404.1567(b)), except that she can only occasionally climb ladders, ropes or scaffolds. She can frequently climb ramps and stairs. She can occasionally stoop, kneel, crouch and crawl. She should have a sit/stand option with the ability to alternate between the two positions approximately twice per hour without losing productivity.

(Tr. 89).

The ALJ then found at step four that Taylor is unable to perform her past relevant work as a rural mail carrier or mail carrier supervisor. (Tr. 96). Finally, at step five, the ALJ found that Plaintiff — given her age (49 at the alleged date of disability onset), high school education, work experience and RFC — could perform jobs that existed in significant numbers in the national economy, such as a "marker," "information clerk," and "toll collector." (Tr. 97). Accordingly, the ALJ concluded that Taylor "has not been under a disability, as defined in the Social Security Act, at any time from August 14, 2013, the alleged onset date, through [June 19, 2017, the date of the ALJ's decision]." (Tr. 97).

## III. LEGAL STANDARD

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision, *Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); and (2) whether the Commissioner applied the correct legal standards. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990); *see also Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam). The District

Court does not review a final decision of the Commissioner *de novo*. *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979); *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

The Social Security Act provides that "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). In *Smith v. Heckler*, 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)), the Fourth Circuit defined "substantial evidence" thus:

> Substantial evidence has been defined as being "more than a scintilla and do[ing] more than creat[ing] a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*See also Seacrist v. Weinberger*, 538 F.2d 1054, 1056-57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistencies in the medical evidence.").

The Fourth Circuit has long emphasized that it is not for a reviewing court to weigh the evidence again, nor to substitute its judgment for that of the Commissioner, assuming the Commissioner's final decision is supported by substantial evidence. *Hays*, 907 F.2d at 1456; *see also Smith*, 795 F.2d at 345; *Blalock*, 483 F.2d at 775. Indeed, this is true even if the reviewing court disagrees with the outcome—so long as there is "substantial evidence" in the record to support the final decision below. *Lester v. Schweiker*, 683 F.2d 838, 841 (4th Cir. 1982).

## IV. DISCUSSION

Taylor raises four arguments in requesting that this Court remand her claim for further consideration. First, she argues that the ALJ did not give sufficient weight to the opinions of her treating physicians. Second and third, she alleges that the ALJ did not accurately assess the limitations imposed by her impairments and thus the RFC does not accurately reflect those

5

limitations. And, finally, Taylor claims that the ALJ's decision cannot stand because the ALJ was improperly appointed in violation of the "Appointments Clause" of the United States Constitution.

### A. The Opinions of the Treating Physicians, Plaintiff's Limitations and the RFC

Taylor argues that the ALJ erred in giving only "partial weight" to the opinions of her treating physicians Dr. Garcia, Dr. Alexanian and Dr. Talip. Also, she argues that the ALJ's assessment of the severity of her symptoms and limitations is not properly supported and the RFC fails to reflect the full scope of the limitations imposed by her impairments.

#### 1. The Opinions of the Treating Physicians

Because Taylor's claim was filed prior to March 27, 2017, the treating physician rule applies. Under both the Commissioner's Regulations and Fourth Circuit law, a treating physician's opinion is entitled to controlling weight "if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record." *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001); *see* 20 C.F.R. § 404.1527(d)(2) (2002). Therefore, "if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Mastro*, 270 F.3d at 178 (citing *Craig v. Chater*, 76 F.3d 585, 590 (4th Cir. 1996)).

After evaluating Dr. Garcia, Dr. Alexanian and Dr. Talip's opinions and the record, the ALJ accorded the opinions only partial weight as follows:

> The undersigned only assigns partial weight to Dr. Garcia's responses on the form because his findings are not consistent with his own medical records, he is not a specialist, and his findings were so extreme as to appear implausible, especially because they were inconsistent with the claimant's admission of her abilities just a few months earlier that she could lift up to 20 pounds….
> …
>
> Dr. Alexanian, of the same family medicine practice, completed a medical source statement provided by the claimant's attorney in April 2015 as well…. He qualified

his responses at the end by stating that the above responses were answered based on input from the claimant and therefore they were subjective. He stated that for a more objective measurement, he recommended a formal functional evaluation. The claimant never had one. Dr. Alexanian's responses indicated the claimant subjectively stated could frequently lift and carry up to 5 pounds and occasionally up to 10 pounds but never more than that. The undersigned notes that this is half the amount she told Dr. Huynh she was capable of lifting just three months prior, and therefore the undersigned does not find these responses persuasive or very reliable. Dr. Alexanian completed the source statement similar to how Dr. Garcia did and continued to qualify his responses stating they were based on the claimant's report (Exhibit 19F). For the same reasons given above for Dr. Garcia's assessment, and especially for the reason he qualified the statement as being reflective of the claimant's subjective reports, the undersigned gives only partial weight to his opinion.

…

Exhibit 23F contains another form provided by the claimant's attorney for Dr. Talip to fill out. It states her most recent exam was June 2, 2016 and that he saw her every 3 months, but again, this is not corroborated by the evidence submitted by the claimant and her attorney. The claimant's attorney pre-filled in the date 8/14/2013 as the date the claimant's symptoms started, yet Dr. Talip did not see the claimant before 2015. He stated that the claimant had at least 11 positive tender points upon physical examination and listed the pertinent areas. He also indicated the claimant had a slew of symptoms, signs or co-occurring conditions, which were not reflected in his treatment notes in review of systems. He indicated the claimant could not lift or carry any weight, not even 0 to 5 pounds, and other extremely restrictive findings (Exhibit 23F). The undersigned has assigned partial weight to these findings because they are not consistent with Dr. Talip's medical records, which, as discussed above, only objectively documented "diffuse tender points," rather than the specific points he indicated on the questionnaire. Furthermore, his findings about her functional abilities were not consistent with her testimony about her admitted abilities. Generally, it is not clear how Dr. Talip came to his conclusion based on the 3 visits he saw the claimant for, the few trials and errors in medications tried by both him and other physicians, and the claimant's admitted daily activities.

(Tr. 93-94).

The Court finds that the ALJ's decision to accord only "partial weight" to the opinions of these physicians is supported by substantial evidence, including the inconsistent and/or contradictory findings discussed above. However, each of Taylor's long-term treating physicians, Drs. Garcia and Alexanian, and Dr. Talip, her treating rheumatologist, imposed limitations that

would preclude competitive work, concluding that as a result of her pain, fatigue and other symptoms she was unable to sit for an hour and stand and/or walk for an hour in an eight-hour work day; would need to avoid continuous sitting; had significant limitations in her ability to lift, carry, grasp, handle, and reach; would frequently have pain, fatigue, or other symptoms severe enough to interfere with her attention and concentration; would need to take unscheduled breaks; and would be absent more than three times a month. (Tr. 560-564, 565-571 and 604-608).

The ALJ is solely responsible for assessing a claimant's RFC. 20 C.F.R. §§ 404.1546(c) & 416.946(c). However, in making that assessment, the ALJ must consider the functional limitations resulting from the claimant's medically determinable impairments. Social Security Ruling ("SSR") 96-8p. The ALJ must also "include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence." *Id.* Although the ALJ properly explained why she gave the treating physicians' opinions only partial weight, she did not explain at all how the limitations reflected in their opinions that she did credit were reflected in the RFC. *See Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) ("remand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review," (*quoting Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013)).

In other words, to provide an RFC that can be meaningfully reviewed the ALJ must do more that simply point out "inconsistencies" in the treating physician's opinions. She must explain how her conclusion that the claimant can in fact do sustained "light work" sufficient to regularly work in a job over an eight hour day follows from the portion of the medical and testimonial evidence to which she gave weight or that she found to be "consistent" or credible. For example,

8

while the ALJ persuasively noted that the doctors' limitation on carrying or lifting weight in <u>any</u> amount was inconsistent with Taylor's testimony that she had lifted up to 20 pounds ("but would pay for it"), the ALJ did not discuss how the credible medical evidence supports a conclusion that Taylor could "occasionally" – i.e., up to one-third of an eight hour day – lift and carry 20 pounds or "frequently" lift and carry 10 pounds.

Therefore, the Court concludes that while the ALJ's decision to give partial weight to the opinions of the treating physicians should be affirmed, the decision must be remanded for the ALJ to further explain how the partial weight given to the limitations in those opinions is reflected in the RFC.

### 2. Plaintiff's Limitations and the RFC

Plaintiff has the burden of establishing her RFC by showing how her impairments affect her functioning. *See* 20 C.F.R. §§404.1512(c) & 416.912(c); *see also, e.g.*, *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004) ("The burden of persuasion . . . to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five."); *Plummer v. Astrue*, No. 5:11-cv-06-RLV-DSC, 2011 WL 7938431, at *5 (W.D.N.C. Sept. 26, 2011) (Memorandum and Recommendation) ("The claimant bears the burden of providing evidence establishing the degree to which her impairments limit her RFC.") (citing *Stormo*), *adopted*, 2012 WL 1858844 (May 22, 2102), *aff'd*, 487 F. App'x 795 (4th Cir. Nov. 6, 2012).

Moreover, "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision." *Reid v. Comm'r Soc. Sec.*, 769 F.3d 861, 865 (4th Cir. 2014) (internal quotations omitted) (citation omitted). "While the ALJ must evaluate all of the evidence in the case record, the ALJ is not required to comment in the decision on every piece of evidence in the record, and the ALJ's failure to discuss a specific piece of evidence is not an indication that the

9

evidence was not considered." *Brewer v. Astrue*, No. 7:07-cv-00024, 2008 WL 4682185, at *3 (E.D.N.C. Oct. 21, 2008) (citing to *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995); *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998); *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005)). Nevertheless, as discussed above, the RFC must be adequately supported by and consistent with the record evidence.

As with the treating physicians' opinions, the Court finds that on remand the ALJ should further discuss or take evidence on several issues raised by Taylor in her motion. First, after the ALJ determined that Plaintiff had the "severe, medically determinable impairment[]" of osteoarthritis, she did not discuss it further in relation to the RFC or otherwise. Defendant contends that Taylor's impairments related to her osteoarthritis effectively overlapped her fibromyalgia impairments and were thus taken into account in the ALJ's ruling. However, again, this is not clearly stated in the ALJ's opinion and should be the subject of explicit consideration by the ALJ on remand.

Second, the ALJ appeared to put significant weight on the fact that there is no record of Taylor receiving medical care for almost six months after she quit her job as a mail carrier, concluding this was "very inconsistent with her allegations of the severity of her symptoms." (Tr. 90). However, the ALJ did not raise this issue at the hearing so Taylor did not have an opportunity to respond to the ALJ's concern with an explanation. Specifically, Taylor suggests in her brief that her lack of medical insurance was responsible for the delay. *See* Tr. 421 (note of Dr. Alexanian at the relevant time stating: "[Taylor] currently does not have insurance and therefore makes it difficult to proceed with further evaluations but she is waiting [for] a new insurance and will let me know at that time we will initiate those evaluations"). Therefore, on remand the ALJ should

allow Taylor to present her explanation for the delay in seeking medical care and reconsider the weight given to the timing of her medical appointments in light of that explanation.

Finally, among other the issues raised by Plaintiff that the ALJ should consider on remand,[4] Plaintiff alleges that the ALJ did not fully consider her documented "neck and shoulder" pain in failing to include any restrictions on lifting or reaching in the RFC.[5] Taylor cites to multiple reports of neck and shoulder pain in the record from 2012 through 2017. Dr. Talip diagnosed degenerative joint disease of the cervical spine in May 2015, noting the MRI and Taylor's pain in her neck and arms, muscular pain in her upper extremities, numbness and pain in her middle fingers and toes. In August 2016 she had pressure point pain in her back and neck, and in March 2017 she had arthralgias in her fingers, and Dr. Lapp detected cuff [likely rotator cuff] pain "at 75-80 torr (normal is > 140 torr, a sign of severe allodynia [severe pain from a simple touch])," "tense traps [likely trapezius muscles]" and paradoxical elevation of the right shoulder, sacro-iliac joint tenderness, and multiple tender points. In sum, given this record and the absence of a detailed explanation of why the ALJ did not impose any limitations in light of these examinations, the ALJ's reliance on the Agency's non-examining consultant, who last reviewed the record in April 2015 and did not have the opportunity to review the physicians' subsequent records, needs, at a minimum, further consideration on remand.

By ordering remand pursuant to sentence four of 42 U.S.C. § 405(g), the Court does not forecast a decision on the merits of Taylor's application for disability benefits. *See Patterson v.*

---

[4] These issues include the ALJ's assessment of Taylor's daily activities. *See* Doc. 14 at 14-18; *Woods v. Berryhill,* 888 F.3d 686, 695 (4th Cir. 2018) ("An ALJ may not consider the type of activities a claimant can perform without also considering the *extent* to which she can perform them." (emphasis in original) (citations omitted)).

[5] The "light work" that the ALJ found that Taylor could do (such as being a toll collector) might require her to reach or handle objects frequently.

*Comm'r of Soc. Sec. Admin.*, 846 F.3d 656, 663 (4th Cir. 2017). "Under § 405(g), 'each final decision of the Secretary [is] reviewable by a separate piece of litigation,' and a sentence-four remand order 'terminate[s] the civil action' seeking judicial review of the Secretary's final decision." *Shalala v. Schaefer*, 509 U.S. 292, 299 (1993) (alternation in original) (emphasis omitted) (quoting *Sullivan v. Finkelstein*, 496 U.S. 617, 624-25 (1990)).

### B. The Appointments Clause

Based on the authority of *Lucia v. SEC*, 138 S.Ct. 2044 (2018), which found that certain Administrative Law Judges of the Securities and Exchange Commission are "officers of the United States" subject to the Appointments Clause of the U.S. Constitution, Plaintiff argues that the ALJ's decision denying her social security claim should be remanded because the ALJ had not been constitutionally appointed. *Id.* at 2055. ("So what relief follows? This Court has held that the 'appropriate' remedy for an adjudication tainted with an appointments violation is a new 'hearing before a properly appointed official.'")

However, Defendant argues in response that in *Lucia* the Supreme Court specifically limited the entitlement of a party to relief to those "who make[] a timely challenge to the constitutional validity of the appointment of [the] officer who adjudicates her case … ." *Id.* Therefore, according to Defendant, because Taylor failed to object to the ALJ's appointment at any time in the administrative proceedings below he cannot challenge the appointment of the ALJ in this Court. *See United States v. L.A. Tucker Truck Lines, Inc.*, 344 U.S. 33, 38 (1952) (holding that parties may not wait until they are in court to raise a statutory "defect in the . . . appointment" of the official who issued the agency's initial decision); *Elgin v. Dep't of Treasury*, 567 U.S. 1, 23 (2012) (plaintiff required to exhaust constitutional claim to administrative agency before seeking review in federal court).

The Court agrees with the Defendant that Taylor's "Appointments Clause" claim has been forfeited by her failure to raise the issue earlier.[6] A constitutional challenge under the Appointments Clause is "nonjurisdictional," and thus a party may forfeit its Appointments Clause argument by failing to raise it. *See, e.g.*, *NLRB v. RELCO Locomotives, Inc.*, 734 F.3d 764, 795, 798 (8th Cir. 2013); *see also, e.g.*, *Freytag v. Commissioner*, 501 U.S. 868, 878-79 (1991); *Freytag*, 501 U.S. at 893-94 (Scalia, J., concurring in part) ("Appointments Clause claims, and other structural constitutional claims, have no special entitlement to review. A party forfeits the right to advance on appeal a nonjurisdictional claim, structural or otherwise, that he fails to raise at trial.").

Indeed, after *Lucia*, a number of courts have found that a challenge to the appointment of an SSA ALJ must be raised in the administrative proceedings in order to preserve it for judicial review. *See, e.g.*, Order at 3, *Garrison v. Berryhill*, No. 1:17-cv-00302-FDW (W.D.N.C. Oct. 10, 2018), ECF No. 24; Order at 55-56, *T. v. Comm'r of Soc. Sec'y Admin.*, No. 1:17-cv-00650-RGV (N.D. Ga. Sept. 28, 2018), ECF No. 17; Order at 5, *Williams v. Berryhill*, No. 2:17-cv-87-KS-MTP (S.D. Miss. Sept. 28, 2018), ECF No. 24; *Davidson v. Comm'r of Soc. Sec'y*, No. 2:16-cv-00102, 2018 WL 4680327, at *2 (M.D. Tenn. Sept. 28, 2018); *Stearns v. Berryhill*, No. C17-2031-LTS, 2018 WL 4380984, at *5-6 (N.D. Iowa Sept. 14, 2018); *Iwan v. Comm'r of Soc. Sec'y*, No. 17-CV-97-LRR, 2018 WL 4295202, at *9 (N.D. Iowa Sept. 10, 2018) ("Because Iwan did not raise her Appointments Clause challenge before the ALJ or Appeals Council, the court finds that she has waived this issue."); *Hugues v. Berryhill*, No. CV 17-3892-JPR, 2018 WL 3239835, at *2 n.2

---

[6] Therefore, the Court need not address and expresses no opinion on the merits of Plaintiff's Appointments Clause argument.

(C.D. Cal. July 2, 2018) ("To the extent *Lucia* applies to Social Security ALJs, Plaintiff has forfeited the issue by failing to raise it during her administrative proceedings.").

That these cases consistently find a waiver and forfeiture under these circumstances is not surprising. It is manifestly fair to all the parties and critical for the efficiency of the Social Security administrative process to require a claimant to raise all issues – in particular issues related to the authority and legitimacy of the hearing officer – as early as the challenge can be made. Plaintiff is not entitled to sit on her hands, see how the ALJ rules on her claim and then, when she is disappointed with the decision, raise the issue for the first time in her District Court appeal. In sum, common sense notions of both fairness and efficiency strongly counsel against allowing a Plaintiff to raise a constitutional challenge to the appointment of an ALJ for the first time on appeal to the District Court.

Therefore, the Court finds that Taylor has waived and forfeited her constitutional claim that the ALJ was not properly appointed and declines her request to remand the case on that ground. *See Lucia*, 138 S. Ct. at 2055; *L.A. Tucker*, 344 U.S. at 37 ("Simple fairness to those who are engaged in the tasks of administration, and to litigants, requires as a general rule that courts should not topple over administrative decisions unless the administrative body not only has erred but has erred against objection made at the time appropriate under its practice.").

## V. ORDER

Plaintiff's Motion for Summary Judgment (Doc. No. 13) is **GRANTED**; Defendant's Motion for Summary Judgment (Doc. No. 17) is **DENIED**; and the Commissioner's decision is

**REVERSED.** This matter is **REMANDED** for a new hearing pursuant to Sentence Four of 42 U.S.C. § 405(g).[7]

      **SO ORDERED**.

Signed: December 18, 2019

*[signature]*

Kenneth D. Bell
United States District Judge

---

[7] Sentence Four authorizes "a judgment affirming, modifying, or reversing the decision . . . with or without remanding the cause for a rehearing." *Sullivan*, 496 U.S. 617, 625 (1990).